Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Thank you, Mr Robinson. Uh, and good morning to everyone. Uh, as always, I wish we could be together in the courtroom in Jacksonville. But this is this is where we are for the time being. I'm happy this week to be with my two daughters. Good luck. Uh, and, uh, I welcome counsel as well. Uh, I hope you got word and I think you got belated word. But we are going to allow counsel the first two minutes of your argument to go uninterrupted. Uh, and I will tell you that I'm gonna, um, enforce the time limits that you're familiar with. Uh, and with that, I'll call the first case is with Luther McKeever versus, uh, Secretary of the Florida Department of Corrections. Good morning, Your Honors. May it please the court counsel. My name is Rachel Reese, and I represent the appellant Luther McKeever in this matter. Mr McKeever is currently an inmate in the state of Florida, serving a 25 year mandatory prison sentence after he was convicted of trafficking in oxycodone. Mr. McKeever was accused and convicted of breaking into his neighbor John Sneed's residence and stealing several prescription pill bottles and the pills inside those bottles. Mr. McKeever pled guilty to two counts of burglary and one count of theft that those charges arose out of the same incident as the trafficking incident. However, he chose to proceed a trial on the trafficking charge because the issue and dispute was how many pills were actually taken and whether or not he could be found guilty of the trafficking amount, which would then put him at risk for the 25 year mandatory sentence that he now is serving. The state's theory of its case was that Mr Sneed had either 112 or 114 pills left inside the bottle when the burglary took place. However, neither the pill bottles or the pills were ever recovered by law enforcement. And the only testimony that was offered by the state to establish the number of pills was the pharmacist who filled the prescription several days earlier and from Mr Sneed himself. Mr McKeever admitted to the jury to breaking into Mr Sneed's residence. He admitted to taking the pills, the bottle and whatever was left. However, the defense's theory was still that the state could not prove because no one knew how many pills were actually inside the bottle when they were taken by Mr McKeever. Mr McKeever filed a motion for post conviction relief back in the state of Florida, the Fifth Judicial Circuit for Citrus County and his motion claimed several grounds of ineffective counsel and it was it was granted on two of those grounds. However, the Fifth District Court of Appeal later reversed that order and found specifically that Mr McKeever failed to meet his burden under either of the prongs under Strickland. Now the issues became the crux of the issues in the petition filed by Mr McKeever with the district court. And now before your honors and the appeal before you today. Now these two, the two claims that were filed by Mr McKeever. One was that counsel was ineffective for failing to investigate witnesses. The other was that counsel was ineffective for failing to call witnesses. Both of them are filed separately but were considered jointly by the district court and jointly in our briefs. And it is our position that the district court aired and denying both of those claims because the state court's application of Strickland was unreasonable in light of the facts that were present to the state court. Now let me ask you to address something. Yes, your honor. Um, on that claim that the state courts actually passed on. So we don't know why the state appellate court did what it did. But one of the things that the state argued to the appellate court was that Mr McKeever hadn't met his burden of proof because he didn't present testimony from the witnesses. Um, as to what they would have said, have they been called? Um, isn't that if that was the reason that the state court did what it did, why isn't that a reasonable construction? And your honor is correct. We don't know why the Fifth District Court of Appeal ruled way that they did. They didn't provide any legal analysis or any other findings. So as to that position, obviously the state alleged that below and it's continuing to argue that fact now. And because we don't know, obviously the court's review of the record is to look at it de novo and to make factual, you know, make those determinations based on the law. And it's our position that the testimony from the evidentiary hearing and the record before the court before the Fifth District Court of Appeal was enough to establish the prejudice prong under Strickland because the Mr McIver obvious Mr McKeever obviously testified about what these witnesses would have advised counsel if he had investigated them specifically the fact that they had, um, bought drugs for Mr Sneed in the past that Mr Sneed was involved with dealing drugs and that people had gone in and out of the house or had been by the house during the period of time before the burglary actually took place, which was an issue at trial was that nobody else would have had access except for Mr McIver and Mr McIver testified to this. And if his testimony had been the only testimony heard at the hearing, I cannot sit here and in good faith say that that would that would be enough. However, the fact of the matter is, is that Mr McIver's own attorney did not dispute anything that he said. He actually corroborated it to an extent. He said that part of his counsel, the attorney, what the attorney said was to Mr McIver told him that two of the witnesses, not all the ones that Mr McIver testified to. And as to those two witnesses, all that he said was that he had drug that Mr Sneed had dealt drugs in the past, but it said nothing about the 36 to 48 hour period between when the pills were gotten from the pharmacy to when the theft happened. Is that correct? I believe that's partially correct, your honor and not to dispute with you. However, I think that what was your job is to dispute me if I'm wrong. Yes, judge. The trial counsel testified to is yes. He first testified that Mr McIver told him about the two witnesses and that they had dealt. They had been dealt drugs by Mr Sneed. He actually originally did not even say in the past. It was just a general expression. And then when it came to the other witnesses that were mentioned, I think it was closer to trial. He could not recall what the context of the conversation was. He remembered that they had he had been disclosed the witnesses, but he couldn't remember what they had discussed between himself and Mr McIver about what the substance was. So it's our position that there was a conversation that was had. He's not disputing what Mr McIver said as to those three witnesses, but even just upping the other two witnesses on its face, those two witnesses in and of themselves, the fact that they had done dealings with Mr Sneed involving prescription pills at any point in time until council went and spoke with these witnesses. Council wouldn't have wouldn't have had any idea that we can't. But we can't say I'm prejudice problem. There would be a reasonable probability of a different result if he had dealt drugs sometime in the past. In fact, frankly, that testimony may not have ever come in because it's not necessarily relevant to the question that was before the court, which is how many pills were in that bottle. That really is the only question was before the jury. Um, so he having dealt drugs sometime in the past is is not terribly relevant for both prejudice purposes, and I'm not even sure for deficiency purposes for the actual question that was before the jury. So I guess I go back to from my perspective, the question that Judge Bratcher act, which is my question, which is, as I understand it, we look at could have the state court where it didn't give us reasons have reasonably reached the conclusion that it did where these witnesses never came and testified. Um, why is that not a reasonable? And why is that not? Why is it unreasonable for the state court to have reached that conclusion where somebody makes a claim of other witnesses and those other witnesses don't show up at the ear? You know, I think it's unreasonable because it just kind of goes back to what counsel said. His testimony was not necessarily that happened in the past. The testimony was that these drugs had been sold to other people in the neighborhood, and then Mr McKeever corroborated that by saying that it was not only in the past, but it was in the days leading up. So I think that the point of our argument is that taking those two individuals testimony together, there was no testimony that was in dispute. The state never even argued at the trial court that he had not established that element of burden. Mr McKeever does have the burden, right? So we're and while they're the 50 C. His opinion is not a model of clarity. Um, and and I should leave it there. Um, it did say that there was a failure to meet the burden. That is the one thing they did say, right? That is correct, right? So I guess is it unreasonable? Not that it's wrong, but is it unreasonable? Could no jurist, no fair minded jurist, which is the standard, have reached the record that Mr McKeever did not meet its burden again? Not not whether you and I sitting there would have reached that conclusion, but could no fair minded jurist have reached that conclusion? It's still our position, Your Honor, that it is unreasonable, and I think it goes beyond what just these witnesses could have testified to. And I think the district court did it good mentioned the way that they phrased it was that the evidence of possible drug dealings with Mr Sneed, not even just witnesses testifying, but that being an alternate theory. I think that is where it becomes unreasonable based on what the facts were at the trial and based on what everyone knew. There was no dispute that the defense originally intended to argue that Mr Sneed had sold drugs. There's emotion and lemony about it because the state did not want that evidence coming in after they learned about it before trial. So that's all within the record before the court. So based on that, I think that it's our position that it is unreasonable based on what is in the record. What was the evidence established? Regardless of whether or not these witnesses testified, the evidence established that individuals were available to testify about drug use of Mr Sneed involving prescription pills close to around the time of the burglary. And if those people would have been called or even investigated and questions could have been asked of Mr Sneed, an alternative theory could have been presented, then the outcome of this case would have been different. And that is why it's our position that the District Court of Appeals opinion is unreasonable. Sorry. Sorry. Well, I was just gonna say you're running out of time. I just want to I wanted to ask you a question about the second issue, if you don't mind, which is so the second issue is the one about whether Mr Sneed's convictions should have been discovered and brought in. And the question I have is, why would the theory be as to why Mr Sneed was lying about the number of pills in the bottle? The convictions would seem to be very useful if there were a theory about why he was lying. But I just can't figure. I mean, I assume you have one, so I'm just curious. I think that they're important for two reasons. Number one, obviously, anybody that has been convicted of a felony, that's important to know as an impeachment purpose, especially when the issue of credibility is so critical, which it was in this case. It literally was the state's entire closing argument was that Mr Sneed versus Mr McKeever. Who are you going to believe? More a 20 year old drug addict who could not remember what he said or did. And then you have this perfect pedestal, the witness who has can tell you exactly how many pills he took on what day. So I think that's the first point. The second point is, unfortunately, the theory that Mr Sneed was, and again, this would all kind of go cumulatively with the other issues. If another theory had been presented that Mr Sneed's priors, he was somebody that was not believable, and he had involved himself in pills in the past and had a reason to lie about the number of pills that were in the bottle because he himself was someone that had dispersed them and they were not actually stolen by Mr McKeever as the state alleged that he had. I think if he was dealing drugs, he did. Yeah, I mean, I'm sorry. I think I cut out a little bit. I apologize. If Mr Sneed was dealing drugs, he wouldn't want people to know that, right? I mean, I think that's right. But it just seems like these two issues go together. It seems like without the first issue to show that he was dealing drugs, the fact that he has these 20 some odd convictions doesn't really stand on its own to do anything. I mean, I do understand that that point and that statement. However, I think that even without the first issue, I think the about the fact that he was dealing drugs. It's the fact that he had been a convicted felon, and I think because of the criticalness of his testimony, I think any impeachment in this case would have been important, and the court would have found any convictions relevant to his impeachment. So I see that my time has run out. I will save the rest for rebuttal. Thank you. May it please the court. Robin Compton, Assistant Attorney General, representing the Secretary Florida Department of Corrections. In this case, it's our position that this was an adjudication on the merits and state court, and therefore deference is due that decision and deference is due as to its findings of fact, the mixed findings of law and fact and the conclusions of law. The 50 C. A decision, uh, reversed after finding that the defendant had failed to prove both prongs of Strickland. So the only thing left for the federal court to determine is what supported or could have supported the last state court is court decision, and it was not an unreasonable determination of Strickland. Um, it's our position that the appellant clearly failed to, uh, demonstrate prejudice. In this case, he would have had to demonstrate that there was a reasonable probability that the jury could have found the quantity of the oxycodone to be below 28 grams. Now, in Florida, under 38 50 F eight B, it's the defendant's burden at an evidentiary hearing to prove his claim and present his evidence. So even if the witnesses would have said what he says they would have said, um, first of all, we got three prescription bottles, not it wasn't just the oxycodone. There was also soma and methadone and taking his testimony as to what he said the witnesses would have said. They don't say which drugs were were, uh, would have impacted the trafficking amount. Um, it was just a general, uh, they would testify to drug activity. Um, also, those witnesses don't testify to any specific amounts of drugs taken. So therefore, it wouldn't that wouldn't have impacted what the trafficking amount was. Also, it's all speculation. Um, post conviction relief cannot be based on speculative assertions. His testimony was this. This is Beverly Martin. Uh, you know, the only reasoned opinion that we have in this case is the trial court opinion who heard evidence. Um, I've read the transcript from that hearing and the the state habeas judge, you know, found fact Yeah. Mission of performance. And, uh, there was prejudice to Mr McKeever. Um, so your your position is we can't look at that at all. Well, the 50 C. A. Vacated that order and reversed it. So we have to go on the last state court decision, which was the fifth. We do not look through to the last reasoned opinion. That's your position. Correct. Okay. So I don't know if if y'all have that before you or not, but I filed a letter of supplemental authority on Friday. Reddit versus secretary. Um, and in that case, the issue was ineffective assistance of counsel for failure to call a witness and produce a medical reports. And the court found that the president prejudice where he offered nothing but his own self serving speculations as to what the witnesses would have testified to. And the court found that his failure to obtain that testimony at the hearing reduced his claim of prejudice to speculation. And that case was out of the district court for the northern district of Tallahassee. But there was that particular, uh, cited to a lot of the case law out of the 11th. So, um, can I ask? Can I ask you a question about? So I think you're stronger argument is prejudice. But I do have some concern. I have some concerns about the vision performance. I mean, it does seem like the lawyer here basically did nothing to try to present a case on behalf of his. Well, he was stuck between a rock and a hard place because he had the appellant's testimony from the beginning that the, uh, prescription bottle was full of medication, even though he, um, he just it was an uphill battle. He the defendant had already pled to two burglaries and the theft of the of the prescriptions. So, um, you know, I don't know what more defense counsel could have done when the defendant is telling him that the prescription bottles were full and the only witnesses he gave him the morning of trial. Well, before the morning of trial was the two witnesses that just would have said that there was, um, that they had bought pills in the past. And granted, I don't think they specifically said in the past, but he certainly defense counsel testified he was not left with impression that he had bought within the 48 hour period. And wouldn't that be relevant? I mean, wouldn't it at least show that there was some explanation for how the bills would have dissipated? I mean, I see the problem for the defendant here, I think, is that the pharmacist comes in and testifies look yesterday or two days before I gave full pill bottle to just need. And then the defendant never has any theory at all for how those would have dissipated. I mean, yeah, there was a theory. The theory was that, um, his testimony at trial was that he didn't know he was so high at the time that he broke into the house that he didn't know how many pills he was gonna take. And so their defense theory was reasonable doubt as to a trafficking amount. And defendant agreed with that. Defendant agreed to that, uh, to that defense. I just I really I don't understand that theory. So the theory was that he just didn't know how many that he didn't know how many pills were in the bottle. Therefore, he could not have. No, no, the defendant testified that he didn't know how many pills he had taken because his testimony at trial was that all he remembered was going in, um, and sitting back on the bed, throwing back, eating, eating pills, eating pills. So, you know, defense counsel also had to deal with a statement that the defendant had given to law enforcement, which the law enforcement officer asked him. Did you take prescription bottles full of medicine out of that residence? And he said yes. So he didn't say they were half full. He didn't say they were they were full of medicine. So, um, you know, they he consented to the strategy. And based on at the evidentiary hearing, what the defendant was telling him was just that, um, you know, we only had drug activity in the past, nothing current. So, you know, I'll grant I'll I'll, uh, acknowledge that it's it's definitely a harder road for me to prove deficient performance than it is for the prejudice. But, you know, under Strickland, you got to prove both to be able to be entitled to relief, and he just can't. He can't demonstrate the prejudice. Um, you going back to the trial. I mean, you agree with me that it was it was the government's burden to show the trafficking amount. Yes. Um, I'm just and the only testimony, as I the drugs that he took. All right. I mean, I never I never saw any evidence, um, that there was any other theory. I mean, there was no other explanation for where the drugs went, right? Well, except that I think it was. It was probably argued in closing, and the defense attorney brought it out on cross of the victim that the House had been left unsecured for two days. And so therefore, you know, because it was unsecured and the drugs were in there, anybody could have could have gotten it. No. But I mean, in terms of the amount that Mr McKeever took, I mean, there was no evidence except that he ate whatever drugs he took. Yes. Yeah. Yes. I'm just curious. I mean, it's been a long time since I've been a trial lawyer. But I mean, did anybody look so his testimony, at least in the habeas proceeding was, you know, that he was already so hot, like he had taken a whole bunch of Xanax? I believe it was. Yeah. At the time he stole this, and then he just took the whole bottle. I mean, is there any did anybody look into the back where there's somebody could physically survive that many pills? 53 pills, I think would be the minimum for the trafficking amount. Um, no, I don't know. I don't know the answer to that question. I know. No, nobody explored that. That route. Right. Right. Right. There were. Can I ask a question about that? Because I'm just my understanding from the record and correct me if I'm wrong, is that no one ever recovered the pill bottles. So although Mr McKeever said that he took all the pills in the bottom, we don't actually know where the pills went because the pill bottles were never recovered. So for all we know, he was just lying and he sold the pills to somebody else. Well, that yes, that's correct. But again, it's your burden, and there's no other explanation from the trial record. This was just the point I was I was trying to make. Yes. Yes. Okay. All right. Um, moving on to issue to the failure to impeach with the prior convictions. It's just our position that it's not a substantial claim under Martinez. Um, counsel, there is testimony at the evidentiary hearing that counsel says he ran the criminal history of John Sneed. Um, and I think it's clear if you look at document 10 exhibit are 33. He was not referring to his son. His son's name was John Sneed also. But when you read it in context, it's clearly he was referring to the victim, not his son. When he said that he ran the criminal history of John Sneed. Plus, I think he he did take John Sneed's deposition. So you're talking about Mr Grant now, right? Um, no, I'm talking about trial counsel said he ran the criminal history, and that's it. Exhibit are this is 33. Yes, the victim. The victim. Trial counsel says that he ran the criminal history of John Sneed. So that's it. Uh, never. I mean, but the record doesn't reflect that he used that or told Mr McKeever about it. I mean, no, no, because we don't. We don't really know. You know, these attachments that he has to the record on the felony convictions. It's from people verified, and it doesn't say what state they're from, what statute numbers he was convicted under as far as the victim goes. So, you know, we don't even know exactly what those are. If he even had the prior felony convictions, I understand they were very unspecific. I guess the question is, you know, if you're exploring whether somebody was effective as counsel or ineffective as counsel ordering the criminal history and then just, you know, for hypothetical not looking at it, that doesn't really improve the performance of of counsel, does it? No, but we don't know that he didn't look at it. We just know that he didn't make any issue of it, and that could be easily resolved because he because there wasn't anything there. Maybe they were withholds. Maybe they weren't even. Maybe they were pretrial interventions. I want to ask you about a hearing that happened on the record that I'm trying to figure out the basis of this hearing. So there was a motion to eliminate hearing that I think you talk about in your brief on the district court talks about where this issue of the criminal history or the criminal conduct of sneak comes up. Yes, and, um, the government has moved to prevent the introduction of that, and then the defendant and his lawyer talked to each other, and the defendant's lawyer says, look, we've agreed we're not going to bring that up. So it does seem that at some point somebody knew something about this criminal history, either the convictions or this other stuff, and that was just a decision not to bring it on. Do we know anything else about what led to that hearing? Um, as far as why he didn't bring it up? No, but what they were talking about what? What was this? What was the nature of the motion? Government's motion eliminated. The state had moved in limiting to keep out this information because they had heard the through jail calls where the defendant that looked like he that was the way he was going was that he wanted to submit this reputation testimony of of the victim, and it was just reputation testimony. It would have had nothing to do with the current amount of pills that were in the bottle, and I think that's what defense counsel testified to. That's why he didn't bring it up, because even at the point of trial, the defendant was still telling him it was he took the whole bottle that the bottles were in. Minister Lombardi testified that McKeever, Mr McKeever, told him at at that hearing as it was going on to not call any witnesses because it would be a waste of time. Yes, he did. So that's another reason why he didn't call any witnesses, and that's why they went ahead and agreed to the motion and limiting to keep out that kind of evidence. And, um, you know, we don't know that any of that stuff would have been admissible anyway. Uh, so Judge Martin, can I have an indulgence for one or two questions from the course? Thank you. I appreciate it. I'll make it quick. Um, counsel on this issue of the prior convictions regarding the prejudice prong, not necessarily the deficiency prong. Um, do we know if there's a reasonable probability this would have changed the result where we do or do not know if the state court would ever have allowed in 25 and 30 year old convictions. And then related to that, is there case law in the state of Florida would suggest that those convictions, um, do not necessarily come in and at least require some sort of weighing or balancing by the court before they do come in where they are that well, this the law in Florida is that it's discretionary with the trial judge on whether or not convictions that old would come in. And they do have to do a 9403 weighing analysis to determine, make that determination. So there's no guarantee that these would have ever, ever come in. Is there a case law that you even cited in your brief, which suggests that a 30 year old conviction that trial judges have not allowed them in, and that's been affirmed by the courts of the district courts? Uh, well, not that I'm not that I found. You didn't say you didn't say Jones in your, uh, in your in your brief. I thought you had. Um, maybe I it's hard to remember the hundreds of cases. No, I don't. I don't have Jones. While, uh, that's all I had. Judge Martin. Thank you. Okay. All right. And we'd ask that you affirm. Thank you, Miss Reese. Thank you. Make please court. Um, first, it's kind of working backwards. First, Judge Luck mentioned the fact that Mr McKeever, that Mr Lambert, he anybody else at the motion and limiting, and that was testified to the evidentiary hearing. The point that I thought is important is that Mr McKeever disputed that and said that that's not something that that's not what they were discussing off the record. And the state court obviously agreed that Mr McKeever was more credible because it ultimately chose to disagree with Mr Lambert ease allegations and whatever his strategic reasons were for not doing things. So it's our position that anything that was a dispute the state court actually found Mr McConnell more credible. That goes to the look through issue. Um, and so let's let's talk about that for a minute. Um, when what is the law on look through? When do you look through? The long look through is that when the last court that made a legal finding, which in this case would be the Fifth District Court of Appeal when they make a finding, but they don't make any factual findings, the court is allowed to look through to the last written opinion that did make findings a little more nuanced. It's a little more nuanced than that. So I'm gonna quote from, um, I'm gonna go from Wilson versus Sellers, which is sort of the seminal look through case. And they're what the court said. And this is literally the holding. It says we hold that the federal court should look through the unexplained decision to the last related state court decision that does provide a relevant rationale. Um, so there's a few things there. A is we find that it didn't meet its burden. And secondly, in other words, that would, in other words, unlike the situation in Sellers, where it just said affirmed or denied. Um, and secondly, does the underlying opinion here, the state court habeas opinion, providing relevant rationale that what we look through. In other words, if it was if this 50 C. A. Had affirmed, then, of course, the relevant rationale would be underneath. But since it went the opposite way, can we say that the state habeas court gave a relevant rationale? And your honor? Yes. First of all, it is our position that the 50 C. A.'s opinion is almost synonymous to saying that it was affirmed or reversed because all they're saying is that he did not satisfy these prongs. There's no explanation. There's no findings associated with that. So it would be the equivalent of saying that this is reversed and trial court's order is vacated. So that is our position on that. So the second prong about it being relevant. It's our position that the findings below are absolutely relevant because the trial court was the only person in a posture to see these witnesses. The trial court also was there for the trial. It was the same trial court judge. The only person as this court and all the courts have said credibility findings. We obviously don't have the ability to look back on a video, so we have to go back and look at those factual findings, and it's our position on that. Those are absolutely relevant to this specific issue. And I see that my time is about to run out. I would ask the courts to reverse the district court's findings and rule in Mr McKee first favor. Thank you very much. Thank you, Miss Reese. And thank you, Miss Compton. I know mysteries. Uh, Judge Joe Flat asked you to help the court by representing Mr McKeever, and you have done so very well, and we appreciate your help. Thank you, Judge. And always way appreciate the help from the state as well. Miss Compton. Thank you. Appreciate that. Thank you. Y'all have a good day. Stay safe.